# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RAVEN RIDGEWAY,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION NO. 1:19-00859-N |
| ANDREW M. SAUL,<br>*Commissioner of Social Security*,<br>    Defendant. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raven Ridgeway brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB"), and for child's insurance benefits based on disability ("CIBBOD"), under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 11, 12, 14) and those portions of the transcript of the

---

[1]    "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

   "Congress amended the Social Security Act in 1939 to provide a monthly benefit for designated surviving family members of a deceased insured wage earner. 'Child's insurance benefits' are among the Act's family-protective measures. 53 Stat. 1364, as amended, 42 U.S.C. § 402(d)." *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547, 132 S. Ct. 2021, 182 L. Ed. 2d 887 (2012).

administrative record (Doc. 10) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED**, and this cause **REMANDED** for further administrative proceedings.[2]

## I.    *Procedural Background*

Ridgeway filed the subject DIB application with the Social Security Administration ("SSA") on January 25, 2017, the subject SSI application on February 6, 2017, and the subject CIBBOD applications on July 25, 2016, and January 24, 2017. After they were initially denied, Ridgeway requested, and on August 9, 2018, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.[3] On October 31, 2018, the ALJ issued an unfavorable decision on Ridgeway's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 10, PageID.57-73).

The Commissioner's decision on Ridgeway's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on October 2, 2019. (*Id.*, PageID.42-46). Ridgeway subsequently brought this action under §§ 405(g) and

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 18; 4/15/2020 text-only order of reference). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 16, 19).

[3] The ALJ "escalated [all of Ridgeway's] claims in order to have a full hearing and decision on all of the issues." (Doc. 10, PageID.57).

1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts,

the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence

could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

of all the relevant facts.").[5]

---

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of*

___

record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

*Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases

upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton,* 209 F.3d at 455)).

Eligibility for DIB, for SSI, and for CIBBOD all require a showing that the claimant is under a disability, 42 U.S.C. §§ 402(d)(1)(B)(ii), 423(a)(1)(E), 1382(a)(1)-(2),[7] which means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel,* 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips,* 357 F.3d at 1237-39).[8]

---

printed in the Federal Appendix are cited as persuasive authority.").

[7] A showing of disability is not required for child's insurance benefits if the claimant "either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19..." 42 U.S.C. § 402(d)(1)(B)(i).

[8] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the

ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant

properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Ridgeway had not attained age 22 as of, and had not engaged in substantial gainful activity since, the alleged disability onset date of September 19, 2015.[9] (Doc. 10, PageID.60). At Step Two,[10] the ALJ determined that Ridgeway had the following severe impairments: attention deficit

---

[9] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted). CIBBOD claims require a showing that, at the time the application was filed, the claimant was "under a disability … which began before he attained the age of 22…" 42 U.S.C. § 402(d)(1)(B)(ii).

[10] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

hyperactive disorder (ADHD), autism spectrum disorder, and obesity. (Doc. 10, PageID.60). The ALJ also determined that Ridgeway had the following medically determinable but non-severe impairments: hypertension, depression, anxiety, opposition defiant disorder, and borderline intellectual functioning. (*Id.*, PageID.60-61). At Step Three,[11] the ALJ found that Ridgeway did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 10, PageID.61-63).

At Step Four,[12] the ALJ determined that Ridgeway had the residual

---

[11] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[12] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant

functional capacity (RFC) "to perform light work as defined by the *Dictionary of Occupational Titles* (DOT), except she will frequently balance, stoop, kneel, crouch, and climb ramps and/or stairs[;] will never crawl or climb ladders, ropes, or scaffolds[;] will avoid frequent exposure to extreme cold/heat/wetness and/or humidity[;] will avoid frequent exposure to fumes, odors, dusts, gases, poor ventilation, or pulmonary irritants[;] will avoid all exposure to hazards such as unprotected heights and dangerous machinery[;] will perform simple routine tasks and be provided short, simple instructions[;] will not work in close proximity to others (i.e., separate workstation)[;] will perform work that does not involve excessive workloads, quick decision making or multiple demands[;] will have occasional, casual interaction with the general public and co-workers, but … will primarily work with things, not people[;] will have casual supervision[;] will have infrequent workplace changes that will be introduced gradually[;] will be provided a break every two hours[; and] will miss one to two days of work per month." (Doc. 10, PageID.63-71). The ALJ also determined that Ridgeway had no past relevant work. (*Id.*, PageID.71).

---

work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

At Step Five, after considering testimony from a vocational expert,[13] the ALJ found that there existed a significant number of jobs in the national economy that Ridgeway could perform given her RFC, age, education, and work experience. (Doc. 10, PageID.71-72). Thus, the ALJ found that Ridgeway was not disabled under the Social Security Act during the adjudicatory periods relevant to her applications. (*Id.*, PageID.72-73).

## IV.   *Analysis*

Ridgeway argues that the ALJ reversibly erred in her consideration of the medical opinion of Ridgeway's treating psychologist, Richard Reynolds, Ph.D. Upon careful consideration, the undersigned agrees.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x

---

[13] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[14]

The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig

---

[14] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject applications. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017).

examined Crawford on only one occasion, her opinion was not entitled to great weight."). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

Failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. Moreover, an ALJ "may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), or "substitute[] his judgment of the claimant's condition for that of the

medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam). "But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled[,]" *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) (per curiam) (unpublished), and "if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

The ALJ summarized Dr. Reynolds's medical opinions as follows:

Richard Reynolds, Ph.D., completed a medical opinion on behalf of the claimant on April 2, 2018. Dr. Reynolds stated that he had worked with the claimant since February 2015. Dr. Reynolds opined that the claimant would have mild to moderate limitation in attending and completing tasks. She had marked limitation in interacting and relating to others and social functioning. She had moderate limitation in caring for herself. (Ex. C9F/1). In an earlier opinion, Dr. Reynolds stated that he believed the claimant would fall in the range of borderline intellectual functioning. He further stated that the claimant was capable of understanding, remembering, and carrying out simple tasks, but would have moderate difficulty with complex tasks. She would likely have moderate deficits in responding appropriately to routine work stresses and interacting with coworkers. Dr. Reynolds

> stated he believed that the claimant would have marked deficits in responding constructively to the public or supervisors. His final diagnosis was Asperger's Disorder/autism spectrum disorder, and ADHD. (Ex. C3F/6).

(Doc. 10, PageID.69).

The ALJ gave "partial weight" to Dr. Reynolds's opinion—presumably rejecting, at least, Dr. Reynolds's findings of marked limitations in interacting and relating to others, social functioning, and responding constructively to the public or supervisors, given the more moderate limitations in the RFC relevant to those domains. The ALJ articulated three reasons for doing so: (1) it was "not consistent with his statements in treating notes indicating that the claimant was improving with Vyvanse and therapy[;]" (2) it was "inconsistent with statements that he was working with the claimant on particular issues to include her disappointment of not getting a response from the jobs for which she had applied[;]" and (3) it was "inconsistent with the vocational assessment of Kim Pugh, an employment specialist, who assessed the claimant as possessing adequate skills for work and that she was able to adequately interact with employees and customers during her assessment." (*Id.*). Substantial evidence does not support these reasons.[15]

As to the ALJ's claim that Dr. Reynolds's opinion was inconsistent with "his

---

[15] A court "cannot engage in … *post hoc* rationalization to justify an ALJ's decision to reject a medical opinion[,]" *Wilson v. Berryhill*, No. CV 1:17-00531-N, 2019 WL 384960, at *6 n.9 (S.D. Ala. Jan. 30, 2019) (collecting cases), and cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Accordingly, the Court considers only the ALJ's stated reasons for giving less than substantial or considerable weight to Dr. Reynolds's opinion.

statements in treating notes indicating that the claimant was improving with
Vyvanse[,]" the undersigned observes that the ALJ's decision does not actually note
any such statements from Dr. Reynolds in discussing the objective medical
evidence.[16] The ALJ *did* note such statements from the records of Bernita Mims,
M.D.,[17] Ridgeway's primary care physician. However, it was not rational for the
ALJ to rely on these notations in rejecting the opinion of a treating mental health
specialist, given the ALJ's decision to reject Dr. Mims's medical opinion because she
was "not a mental health professional," among other reasons. (Doc. 10, PageID.69).

The ALJ also claimed that Dr. Reynolds's opinion was inconsistent with "his
statements in treating notes indicating that the claimant was improving with …
therapy." However, this conclusory reference to unspecified improvements with
therapy, unsupported by any specific citations to the record, does not convince the
undersigned that the ALJ adequately considered Dr. Reynolds's treatment notes as
a whole, but instead suggests impermissible cherry-picking of evidence to reach a
desired result. *See McCruter*, 791 F.2d at 1548 ("It is not enough to discover a piece
of evidence which supports [a] decision, but to disregard other contrary evidence[,]"
and a decision cannot be upheld where it was reached "by focusing upon one aspect
of the evidence and ignoring other parts of the record"); *Denton v. Astrue*, 596 F.3d
419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical

---

[16] Dr. Reynolds first began treating Ridgeway in February 2015, two years before
Ridgeway's primary care physician began prescribing her Vyvanse for her ADHD.
(See Doc. 10, PageID.65-66).

[17] The ALJ's decision mistakenly refers to Dr. Mims as Dr. "Sims."

evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Dr. Reynolds's treatment records document Ridgeway's recurring difficulties with anger management, irritability, and uncooperative and impulsive behavior, many of which are noted in the ALJ's decision. Admittedly, the records also document temporary periods of improvement, and varying levels of severity, for these symptoms. Nevertheless, the recurring and persistent nature of these symptoms tend to largely support Dr. Reynolds's opinion that Ridgeway had marked limitations in interacting and relating to others, social functioning, and responding constructively to the public or supervisors. Also, in the form on which he provided his opinion, Dr. Reynolds specifically noted "continued impairment in social functioning, age appropriate self care + ability to tolerate stressors," though he did acknowledge "some limited improvements in family interaction." (Doc. 10, PageID.494). And, as the ALJ noted, the notes for the examination at which Dr. Reynolds completed his opinion indicate that Ridgeway had again become "frustrated" after her mother confronted her about forgetting to perform household chores. (*Id.*, PageID.67). At the very least, the undersigned is not convinced that the ALJ fulfilled her duty "to weigh the evidence" and "resolve material conflicts in the" evidence on this point. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam).

As to Dr. Reynolds's purported "statements that [Dr. Reynolds] was working with the claimant on particular issues to include her disappointment of not getting a response from the jobs for which she had applied," it is not clear to the

undersigned how such statements contradict Dr. Reynolds's opinion. Merely noting that Dr. Reynolds was "working with" Ridgeway "on particular issues" does not indicate whether Ridgeway was showing any improvement from such therapy. And as for the vocational assessment of employment specialist Kim Pugh, there is no indication that Pugh is a medical professional, much less an acceptable medical source under the Social Security regulations. Given that the contrary report of a non-examining physician cannot provide the "good cause" to reject a treating physician's opinion, *see Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985 (per curiam)), the undersigned does not believe that the opinions of a non-medical source, even if based on actual examination of a claimant, can either. Further detracting from the weight of Pugh's vocational assessment is that it appears to have been based on a one-time observation of Ridgeway performing tasks at a grocery store for one-and-a-half hours. (*See* Doc. 10, PageID.482).[18]

In sum, the ALJ's articulated reasons for giving less that substantial or considerable weight to Dr. Reynolds's medical opinion are not supported by

---

[18] Ridgeway, however, goes too far in claiming that "[t]he opinion of Kim Pugh is irrelevant, as she has no credentials to provide a basis for her opinion." (Doc. 12, PageID.547). Ridgeway does not contest Pugh's designation as an employment specialist, and her assessment was based on her observations of Pugh in a work setting. Certainly, if Ridgeway's mother can provide opinions of Ridgeway's limitations based on her observations, despite not being a medical professional, so can Pugh. While Pugh's assessment is relevant evidence that the ALJ could appropriately consider, the undersigned finds that it is not substantial evidence to contradict the medical opinion of a treating physician.

substantial evidence. On this basis, reversible error has been shown.[19] Accordingly, the Commissioner's final decision denying Ridgeway's applications for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.[20]

---

[19]     Ridgeway has also argued reversible error in the ALJ's consideration of other medical opinions, and in the ALJ's credibility determination as to Ridgeway's subjective complaints. However, reversible error has already been found as to the ALJ's consideration of Dr. Reynolds's opinion, and the Commissioner's resolution of those other issues might also change depending on what weight the Commissioner assigns Dr. Reynolds's opinion on remand. Accordingly, the undersigned declines to address Ridgeway's remaining claims of error. This should not hamper effective appellate review of this decision. *See Henry*, 802 F.3d at 1267 ("Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion…" (citation and quotation omitted)).

The undersigned expresses no view on what weight Dr. Reynolds's medical opinion should be assigned on remand, as the responsibility for weighing evidence is generally committed to the Commissioner. *See Wheeler*, 784 F.2d at 1075 ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.").

[20] Ridgeway does not request that this Court reverse with instructions to the Commissioner that she be found disabled and awarded benefits; regardless, the undersigned is not persuaded that such relief would be appropriate in this procedural posture. *Compare Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) ("Generally, a reversal with remand to the [Commissioner] is warranted where the ALJ has failed to apply the correct legal standards."), *with id.* (a court may "remand the case [with] an order awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt"). *See also INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002) (A court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (citation and quotations omitted)).

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Ridgeway's January 25, 2017 DIB application, her February 6, 2017 SSI application, and her July 25, 2016 and January 24, 2017 CIBBOD applications, is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Ridgeway a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Ridgeway's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Ridgeway be awarded benefits on the subject applications following this remand.[21] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there

---

[21] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**